IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA D. GIBSON, | No. CIV S-10-2755-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 24) and defendant's cross-motion for summary judgment (Doc. 25).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff initially applied for social security benefits on April 25, 1994. She was found to be disabled based on an inflammatory arthritis impairment which met Listing 1.02 of the social security Listing of Impairments. Plaintiff's disability onset date was March 25, 1994. In an April 7, 2000, continuing review, the agency determined that plaintiff's disability had ceased as of April 2000 due to medical improvement. Her appeal from the termination of benefits was denied. Plaintiff then requested an administrative hearing, which was held on May 16, 2001. The termination of benefits was upheld and the Appeals Council denied any further agency review on June 26, 2002.

Plaintiff then filed the current application for benefits on August 12, 2002, alleging an onset date of August 30, 2001. Plaintiff claims that disability is caused by a combination of: "rheumatoid disease and/or arthritis; ankylosing spondylitis; spondyloarthropathy; Crohn's disease (with inflammatory bowel disease, gastroesophageal reflux disease, and/or active ileitis and colitis); pain/numbness in extremities and joints; DeQuervain's tenosynovitis; tendinitis (left wrist) and/or residual effects of carpal tunnel syndrome surgeries; fibromyalgia; migraines and headaches; mental health disorders of depression, anxiety, and/or somatization (somataform disorder). . . ." Plaintiff's second claim was denied initially and on reconsideration. Plaintiff requested a hearing which was held on March 14, 2005. A vocational expert and medical expert both testified at the hearing. An unfavorable decision was rendered but, on appeal, the decision was vacated and the matter remanded. The Appeals Council's June 25, 2007, remand order directed: (1) re-assessment of plaintiff's condition in light of a revised date last insured; (2) further evaluation of the plaintiff's residual functional capacity; (3) if warranted, supplemental vocational expert testimony; and (4) consideration of the August 29, 2001, cessation decision.

/ / /

/ / /

A further hearing was held on June 19, 2008, before Administrative Law Judge ("ALJ") Jean Kingrey. Once again, a vocational expert offered testimony. In an August 20, 2008, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has a combination of impairments that is severe, including: Crohn's disease and residuals of carpal tunnel syndrome surgical releases; the claimant also carries diagnoses of anklosing spondylitis (arthritis of the spine leading to lipping or fusion of the vertebrae), spondyloarthropathy (spinal joint problems), and fibromyalgia, each of which is not well supported by objective medical evidence; her asthma, anemia, hypertension, hyperlipidemia, and hypothyroidism are generally well-controlled by medication.

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except: carrying/lifting is limited to a maximum of 34 pounds on an occasional basis; bending, twisting, crouching, kneeling, crawling, walking, climbing stairs, climbing ladders, reaching above the shoulders, and pushing/pulling are limited to an occasional basis; use of the hand is not limited except in terms of lift/carry limitations; due to her Crohn's disorder, easy bathroom access is required; operation of hazardous machinery is precluded, based on the medications used by the claimant.

4. The claimant is able to perform past relevant work as a medical assistant.

7. The claimant is also capable of performing other jobs that exist in significant numbers in the national economy.

After the Appeals Council declined review on August 17, 2010, this appeal followed.

///
///
///
///
///
///
///

3

## II.  SUMMARY OF MEDICAL OPINION EVIDENCE

The certified administrative record ("CAR") contains the following relevant medical opinion evidence, summarized chronologically below:

July 14, 1994 – Agency consultative doctor Minyard, M.D., provided a physical residual functional capacity assessment. The doctor opined that plaintiff can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. Dr. Minyard also opined that plaintiff could sit/stand/walk for six hours in an eight-hour workday. Plaintiff's push/pull ability was found unlimited. No postural, manipulative, visual, communicative, or environmental limitations were noted.

January 6, 1995 – Plaintiff's treating physician, Trudy Termini, M.D., submitted a "Medical Evaluation Interrogatory." Citing "attached medical records," the doctor opined that plaintiff can occasionally lift only two pounds and frequently lift only one pound. It was also opined that plaintiff could sit/stand/walk for only one hour in an eight-hour workday. Reaching, fingering, pushing, pulling, and handling were also found to be limited, though no degree of limitation was noted by the doctor. Dr. Termini opined that plaintiff should never climb, balance, stoop, crouch, kneel, or crawl. Plaintiff was also found to have environmental restrictions to heights, temperature extremes, moving machinery, and humidity. Dr. Termini opined that plaintiff's impairments rendered her disabled as of March 23, 1994. The doctor opined that plaintiff's condition was expected to last indefinitely.

April 5, 2000 – Agency consultative doctor Charles Spray, M.D., submitted a physical residual functional capacity assessment. The doctor opined that plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. Plaintiff could sit/stand/walk for about six hours in an eight-hour workday. Plaintiff's push/pull ability was limited in the upper extremities. As for postural limitations, Dr. Spray opined that plaintiff should never climb ladders, ropes, or scaffolds, and should only occasionally stoop. No manipulative limitations were noted except that plaintiff could only occasionally perform

forceful grasping tasks. No visual, communicative, or environmental limitations were noted. The doctor offered the following summary:

> This 36 yr old female was allowed as a Meets Listing 1.02, based on ALJ decision as per testimony given by Dr. Moorman at the hearing. At that time, the evidence shows cl does have some synovitis in her hands and swelling in her wrists. Current evidence shows cl's condition has medically improved. Although cl has some symptoms suggestive of carpal tunnel syndrome, her fine motor and strength is unimpaired. Current records do not indicate any objective evidence that would restrict cl's ability to walk or stand. Her gait is normal. Cl performed to 10.1 METS on a treadmill. As cl has demonstrated significant medical improvement since CPD, recommended a cessation of disability benefits."

July 24, 2000 – Agency consultative doctor Sharon Johnson, M.D., submitted a physical residual functional capacity assessment. The doctor opined that plaintiff could occasionally lift/carry 10 pounds and frequently lift/carry less than that amount of weight. Plaintiff could sit/stand/walk for about six hours in an eight-hour workday. Plaintiff's push/pull ability was found to be unlimited. No postural, visual, communicative, manipulative, or environmental limitations were noted.

September 18, 2000 – Agency consultative psychologist Robert Henry, Ph.D., submitted a psychiatric review technique form. The doctor found no restrictions in activities of daily living, no difficulties with maintaining social functioning, and no episodes of decompensation. Dr. Henry noted only "seldom" instances of difficulties with concentration, persistence, or pace.

October 16, 2000 – Plaintiff's treating doctor Robert C. Gerber M.D., submitted a letter outlining his diagnoses. He diagnosed: (1) spondyloarthropathy with a Reiter's-type onset; (2) fibromyalgia; and (3) panic disorder. Dr. Gerber opined that plaintiff is "not capable of gainful employment." Other than a sedimentation rate of 51mm/hr on October 8, 1999, no objective findings are noted. Accompanying Dr. Gerber's letter is a fibromyalgia residual functional capacity questionnaire in which the doctor noted various subjective and objective findings and concluded that plaintiff's fibromyalgia prevented her from working.

<u>February 10, 2003</u> – Agency examining psychologist Michael Villanueva, Psy.D., reported on a psychodiagnostic evaluation. Following an objective examination, the doctor could diagnose only "[p]ossible depression." No Global Assessment of Functioning score was given. Dr. Villanueva offered the following recommendation:

> The patient does not present as being anxious during clinical exam. Also, her report of anxiety is somewhat inconsistent. She is able to leave the household for some tasks. Her affect does not suggest severe depression at this time, though that could be because depression is adequately managed with current treatment regimen.
>
> The patient seems over focused on discomfort. Pain ratings are high.

<u>February 24, 2003</u> – Agency consultative psychologist Dorothy Anderson, Ph.D., submitted a psychiatric review technique form. Dr. Anderson noted "[p]robable depression." The doctor found mild restrictions in activities of daily living, mild restrictions in plaintiff's ability to maintain social functioning and no limitations in the ability to maintain concentration, persistence, and pace. No episodes of decompensation were noted.

<u>February 25, 2003</u> – Agency consultative doctor Linda Jensen, M.D., submitted a physical residual functional capacity assessment. The doctor opined that plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. Plaintiff could sit/stand/walk six hours in an eight-hour workday. Push/pull ability was found to be unlimited. For postural limitations, the doctor opined that plaintiff should only occasionally kneel. No manipulative, visual, communicative, or environmental restrictions were noted.

<u>May 8, 2003</u> – Plaintiff's treating physician Jon Van Valkenburg, M.D., submitted a physical functional impairments/limitations report. The doctor opined that plaintiff could sit/stand/walk/drive for four hours at a time for a total of four hours in a workday. Plaintiff was assessed as capable of occasionally lifting up to 24 pounds. Dr. Van Valkenburg also opined that plaintiff could occasionally engage in all other postural, manipulative, communicative, and visual tasks. The doctor specifically concluded that plaintiff could use both hands for simple and firm grasping, as well as firm manipulation. Despite these findings, the doctor concluded that

plaintiff could not work.

July 16, 2003 – Dr. Van Valkenburg completed a functional limits assessment form in connection with a request from the Oregon Department of Human Services. On this form, the doctor stated that plaintiff would be able to participate in on-hour daily work search classes, search for a job for 10 to 40 hours per week, gain on-the-job work experience, and attend a life skills class lasting between one and four hours.

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## IV.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ improperly rejected the opinions of plaintiff's treating and examining doctors; (2) the ALJ improperly rejected plaintiff's testimony as not credible; (3) the ALJ failed to consider the combined effect of impairments when evaluating the Listing of Impairments; and (4) the ALJ relied on vocational expert testimony which did not accurately reflect plaintiff's limitations.

### A.  Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff claims the ALJ erred with respect to analysis of the opinions of treating physicians Drs. Gerber and Van Valkenburg.[1]

    1.    Dr. Van Valkenburg

Plaintiff argues that the ALJ improperly rejected Dr. Van Valkenburg's August 23, 2005, report "that Plaintiff's skin condition was 'itchy and blotchy with sun exposure' and was 'now worse.'" Plaintiff also assigns error to the ALJ's rejection of Dr. Van Valkenburg's opinion that plaintiff's psoriatic arthritis is "quite disabling." Plaintiff further argues that the ALJ erred by concluding that Dr. Van Valkenburg provides no explanation for his conclusions, noting that "Dr. Van Valkenburg's opinion is well supported by the clinical findings in his chart notes."

The court finds no error. First, there is no opinion as to plaintiff's work capacity expressed in Dr. Van Valkenburg's observation that plaintiff's skin was itchy and blotchy in August 2005, following sun exposure. Second, as to the doctor's statement that plaintiff's arthritis is disabling, the ALJ was correct in stating that ultimate conclusions of law as to

---

[1] Though plaintiff also states that she is challenging the ALJ's analysis of the opinions of Drs. Adesman, and Greenburg, she points to no specific areas of the ALJ's decision discussing these doctors.

disability are the sole purview of the agency. Third, even assuming that there is objective evidence in the doctor's chart notes, the fact remains that Dr. Van Valkenburg did not indicate which specific objective findings noted in the charts gave rise to which specific opinions.

### 2. Dr. Gerber

Plaintiff argues that the ALJ erred in stating that Dr. Gerber had never reviewed x-rays because the doctor's notes reflect that he revised his findings based on x-ray results. Even if the ALJ erred in this regard, other reasons were cited for rejecting Dr. Gerber's assessments. Specifically, the ALJ stated:

> . . . Contrary to the reporting by Dr. Goodman, Robert Gerber, M.D., had reported on May 15, 2000, that the claimant's "x-rays exhibited bilateral sacroiliitis, *sine qua non* of ankylosing spondylitis and spondyloarthropathy." . . . However, little weight is given to the reporting by Dr. Gerber since bilateral sacroiliitis is also an indicator of inflammatory bowel disease, a condition that was diagnosed for the claimant subsequent to Dr. Gerber's reporting and this latter condition (Crohn's) now has significant objective medical support in the record. . . .

In other words, because Dr. Gerber was wrong with respect to his analysis of bilateral sacroiliitis (which turned out to relate to Crohn's disease rather than, as the doctor opined, ankylosing spondylitis and spondyloarthropathy), the ALJ reasonably concluded that none of Dr. Gerber's opinions were entitled to significant weight. The court can hardly fault this logic.

### B. Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

According to plaintiff, the only reference to her credibility in the hearing decision is the ALJ's conclusion that plaintiff's statements concerning her limitations are "accepted only to the extent that they are consistent with the residual functional capacity assessment arrived at above." Plaintiff argues that this conclusion is not supported by the reasons required to discredit her testimony. As to plaintiff's credibility, the ALJ discussed each of plaintiff's subjective complaints one by one. Beginning with plaintiff's claim that she is disabled, in part, due to a skin condition, the ALJ stated:

> As noted above, in her current Disability Report, the claimant specifically alleged that her ability to work is limited, in part, by chronic solar urticaria. . . . Steadman's Medical Dictionary defines urticaria as a skin condition, also called hives, with intensely itching welts. . . . Although listing this condition in first or second place among her disabling impairments, even if urticaria is medically objectively demonstrated by the medical record, the associated symptoms reported by the claimant . . . are not found to cause more than mild restriction of work activities. Although the claimant reported itching with sun exposure on August 23, 2005, and treating physician Valkenburg assessed dermatitis due to solar radiation (Exhibit B-30F, pages 13 and 17), he dropped this assessment at the next contact on September 19, 2005, when the claimant reported that she had quit taking her morphine because it made her itch (Exhibit B-30F, page 2). The claimant is not found to have a skin condition that is a severe medically determinable impairment.

Thus, just by this one example, the ALJ demonstrated how plaintiff's subjective testimony of disabling hives is inconsistent with the objective evidence. In fact, the ALJ found that not only is plaintiff's testimony of disabling hives not credible, but also found that plaintiff does not even have a condition which could reasonably be expected to cause the symptoms about which plaintiff complains. Similarly, the ALJ found that Raynaud's phenomenon – which plaintiff claimed in the current application as a disabling condition – is not a medically determinable impairment in this case. Given that plaintiff complained of disabling symptoms arising from conditions which were not even medically determinable, the ALJ was entitled to discount all or part of plaintiff's testimony as not credible based on the inconsistency.

/ / /

/ / /

### C. Listing of Impairments Analysis

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

As to the Listings, the ALJ stated:

> The medical evidence indicates that the claimant has physical and psychological impairments that, in combination, are severe within the meaning of the Regulations. However, the claimant's impairments, severe and non-severe, singularly and in combination, are not accompanied by the findings specified for any impairment or combination of impairments included in any section of the Listings. No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Particular consideration is given to Listings 1.00 (musculoskeletal system, (11.00 (neurological), 5.00 (digestive system including liver), and 12.00 (mental disorders). . . .

Plaintiff argues that the ALJ erred in concluding that her impairments did not meet Listings 5.06, 5.08, or 14.09B. According to plaintiff, the record indicates that she "may" have meet or at least equaled either Listing 5.06 or 5.08 due to her Crohn's disease. Plaintiff does not, however, indicate which specific pieces of evidence from the medical record satisfy any particular listing requirement. As to Listing 14.09B, relating to ankylosing spondylitis, plaintiff appears to argue that Dr. Gerber's statement that x-rays "exhibited bilateral sacroiliitis, *sine qua non* of ankylosing spondylitis and spondyloarthropathy" satisfies this listing. As discussed above, however, Dr. Gerber's analysis in this regard turned out to be wrong. Plaintiff does not point to other evidence in the record which satisfies this listing.

///

///

13

### E. Vocational Expert Testimony

The ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues that the ALJ erred by not relying on the vocational expert's testimony based on questions that reflected Dr. Van Valkenburg's limitations. As discussed above, however, the ALJ did not err in discounting Dr. Van Valkenburg's opinions. Therefore, the ALJ was not required to rely on vocational testimony reflecting those opinions.

/ / /

/ / /

/ / /

/ / /

/ / /

## V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.    Plaintiff's motion for summary judgment (Doc. 24) is denied;

      2.    Defendant's cross-motion for summary judgment (Doc. 25) is granted; and

      3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 30, 2012

                                                          **CRAIG M. KELLISON**
                                                          UNITED STATES MAGISTRATE JUDGE